ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 17 2011

CLERK, U.S. DISTRICT COURT
By:_____ Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHARLENE HOMER, §
    Plaintiff. §
§
VS. § ACTION NO. 4:10-CV-081-Y
§
MICHAEL J. ASTRUE, §
COMMISSIONER OF SOCIAL §
SECURITY, §
    Defendant. §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

The plaintiff, Charlene Homer ("Homer"), filed an application for Title II disability insurance benefits ("DIB") on July 17, 2007, alleging a disability onset date of May 21, 2007.[1] (Transcript ("Tr.") 9, 59.) After her application was denied initially and on reconsideration, Homer timely requested a hearing before an administrative law judge ("ALJ"). A hearing was held in Fort Worth, Texas before ALJ James Stephen Russell on February 3, 2009. (Tr. 9, 19-55.)

In her application, Homer claimed disability due to a number of impairments, including lumbar disc displacement, myofascial pain syndrome, lumbar stain degenerative disc, disc bulging disease L 4-5, disc protrusion C3-4, C4-5, and C5-6 bulge, lumbar spine strain, cervical and thoracic spine paraspinal muscles, myalgia/myositis, lumbar spine disc disorder, and chronic and severe

---

[1] Homer's last insured date for Title II purposes was September 30, 2010, meaning that she must establish disability on or before that date in order to be entitled to a period of disability and DIB. (Tr. 9); 42 U.S.C. §§ 416(i)(3) and 423(c)(1).

- 1 -

neck, back and shoulder spasms, a pinched nerve in her neck and neck disc protruding 14 15 and 13. (Tr. 9, 105-09, 124.) On February 25, 2009, the ALJ issued a decision finding that she was not disabled. (Tr. 9-18.) On December 8, 2009, the Appeals Council denied Homer's request for review. (Tr. 1-5.) Homer subsequently filed the instant action in federal court on February 4, 2010. (doc. #1.)

## II. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.

Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

### III. ISSUES

Homer presents the following issues:

1. Whether the ALJ's residual functional capacity ("RFC") determination precludes Homer's performance of any occupation in the national economy as a matter of law; and

2. Whether the ALJ's step five determination that Homer is capable of sustained work is supported by substantial evidence.

(Plaintiff's Brief ("Pl. Br.") at 4.)

## IV. ADMINISTRATIVE RECORD

### A. <u>Factual Background</u>

Homer was born on January 27, 1952, making her of "advanced age" on all dates relevant to the ALJ's decision. (Tr. 16); 20 C.F.R. § 404.1563. She has a high school diploma and completed data entry training in 1980. (Tr. 134-35.) In her application for disability, Homer listed her longest period of past relevant work as a teacher assistant for the Fort Worth Independent School District ("FWISD") from 1979 to 2003. (Tr. 125.) She described her duties as assisting with the needs of special needs children, including lifting, diaper changing, retraining, tube feeding and toilet training. (*Id.*) She stated that she was frequently required to lift 50 pounds or more. (Tr. 125-126.) Beginning in 1994, Homer also worked additional part time jobs as an operator and cashier, ending in 2002. (Tr. 128, 218, 246.)

In late 2002, Homer suffered an injury at her job with FWISD when a student pulled the chair she was attempting to sit on out from underneath her. (Tr. 128, 218, 246.) After going through various treatments for her injuries, she was ultimately terminated from her job by FWISD because she was restricted to light work by her doctors and FWISD stated that no jobs at the light exertion level were available. (Tr. 230.)

From the fall of 2004 until she was injured again in May 2007, Homer went to work at Child Care Associates. (Tr. 141.) She described her job there as a teacher assistant, and she listed her duties as opening the center, greeting parents and children, checking head counts, assisting with the preparation of breakfast, taking payments for childcare, and working with early three-year-olds for instruction. (*Id.*) She described this job as requiring six hours of standing and walking each day, lifting 20 pounds on an occasional basis, and lifting up to 10 pounds frequently. (Tr. 141-42.) During the time Homer worked at Child Care Associates, she also worked a part time job with Marmaxx Operating Corporation as a cashier. (Tr. 115-16, 137.)

On May 21, 2007, her alleged onset date for Social Security purposes, Homer fell from a stool while at work at Child Care Associates, injuring her lower and upper neck, back, right arm,

right hand, and right foot. (Tr. 458.) Her medical records document treatment for various injuries since that date. (*Id.*) Homer did not engage in substantial gainful activity from May 21, 2007 through the date of the ALJ's decision. (Tr. 11, citing 20 C.F.R. §§ 404.1571 *et seq.*)

## B. Administrative Record

At her hearing before the ALJ, Homer was represented by an attorney and testified on her own behalf. (Tr. 23.) An impartial vocational expert ("VE"), Barbara Dunlap, also testified. (*Id.*) The VE described Homer's past relevant work as (1) a cashier in a retail environment, light exertion, with a specific vocational preparation ("SVP")[2] level of three, (2) a PBX operator, sedentary in exertion, semi-skilled at an SVP level of three, and (3) a teacher assistant, light in exertion, semi-skilled with an SVP level of four. (Tr. 28.) She did not differentiate between the positions Homer held at FWISD and Child Care Associates. (*Id.*)

The ALJ asked the VE to take the RFC for Homer determined by an independent medical examiner and answer whether such a person could return to any of the past work the VE had described for Homer. (Tr. 25-28.) The VE responded no. (Tr. 29.) The ALJ then proceeded to step five and asked the VE whether there was any other work in the region or nation that such a person could perform with a transferable skill. (*Id.*) The VE responded that such a person could perform positions as receptionist, information clerk, and appointment clerk, all sedentary, clerical positions where the person is answering the telephone, meeting and greeting people, and giving out information to people. (*Id.*) The ALJ asked the VE whether Homer would have skills from her past jobs that would suffice to fill the job duties of the occupations she named. (*Id.*) The VE responded that Homer would have transferable communication skills. (Tr. 29-30.) The VE told the ALJ that

---

[2] The SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See Dictionary of Occupational Titles* app. C (rev. 4th ed. 1991). Unskilled work usually requires less than thirty days of training, which corresponds to an SVP level of 1 or 2; semi-skilled work corresponds to an SVP level of 3 or 4; and skilled work requires an SVP level of 5 or higher. Social Security Ruling 00-4p; *see also generally* 20 C.F.R. §§ 404.1568, 416.968.

there were in excess of 6,000 positions in the category she identified in the State of Texas, and that there were in excess of 80,000 of such positions in the national economy. (*Id.*)

Homer also testified on her own behalf, explaining that she was forced to leave her last job as a teacher assistant working with three-year-olds because she was injured on May 21, 2007 after falling off of a stool. (Tr. 35-36.) Describing her daily activities, she told the ALJ that she did not go out of the house to visit family, but that she did attend church and bible study and doctor appointments and that she was able to drive herself. (Tr. 39.) She also said that she went to the grocery store with her daughter accompanying her. (Tr. 40.) She testified that she was able to keep up with her own personal hygiene and that she did her own laundry. (Tr. 46.)

### C. **The ALJ's Decision**

In making his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 9-18.) At step one, the ALJ found that Homer met the disability insured status requirements of the Social Security Act through September 30, 2010. (Tr. 11.) He also found that she had not engaged in substantial gainful activity since May 21, 2007, her alleged onset date. (*Id.*, citing 20 C.F.R. § 404.1571 *et seq.*)

At step two, the ALJ determined that Homer had the following severe impairments: lumbar degenerative joint disease; slight disc bulges at C3-4, C4-5, C5-6, and L4-5; sciatica, right C5 radiculopathy, cervical spondylosis and cervicalgia. (*Id.*, citing 20 C.F.R. § 404.1571.) The ALJ continued to step three, finding that Homer did not have an impairment or combination of impairments that met or equaled a listing at step three of the disability analysis. (Tr. 13, citing 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §404.1525 and 404.1526.) The ALJ then found that Homer had the following RFC based on the RFC determined for her by an independent medical examiner:

> ...to perform sedentary work as defined in 20 CFR 404.1567(a) except: she can stand and sit for a total of four hours each; she can kneel, squat, bend, and stoop for two hours; she can push and pull for two hours; she cannot do any overhead work with her right, dominant arm; and she cannot lift more than ten pounds for more than four hours with her right arm.

(*Id.*)

At step four, the ALJ determined that Homer was unable to perform any of her past relevant work. (Tr. 16, citing 20 C.F.R. § 404.1565.) Then at step five the ALJ found that, given Homer's age, education, work experience, RFC, and acquired transferable skills, there were jobs existing in significant numbers in the national economy that she could perform. (*Id.*, citing 20 C.F.R. § 404.1568, 404.1569, and 404.1569a.) Ultimately, the ALJ concluded that Homer was not disabled within the meaning of the Act at any time from her alleged date of onset through the date of the decision. (Tr. 17-18, citing 20 C.F.R. § 404.1520(g).)

## V. DISCUSSION

### A. Whether the ALJ's residual functional capacity ("RFC") determination precludes Homer's performance of any occupation in the national economy as a matter of law

Homer first asserts that the ALJ's decision must be reversed because his RFC determination precludes Homer's performance of any occupation in the national economy as a matter of law. (Tr. 12.) As previously set forth, the ALJ determined that Homer maintained the RFC to perform sedentary work except that, *inter alia*, she can only sit and stand for a total of four hours each. (Tr. 13, citing *Lawler v. Heckler*, 761 F.2d 195, 197-98 (5th Cir. 1985) and 20 C.F.R. § 404.1567(a)-(e) (1994). Homer maintains that because regulations define sedentary work as requiring the ability to sit for six hours of an eight-hour work day and her RFC states that she cannot, as a matter of law she must be found disabled. (Pl. Br. at 12-13, citing Social Security Ruling 96-9p 1996 WL 374185, *6.) In evaluating a claimant's RFC, the Fifth Circuit has looked to SSA rulings, which are not binding on this Court, but which may be consulted when the statute at issue provides little guidance. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).

Social Security Ruling 96-9p defines the amount of time one must be able to sit to perform sedentary work. Specifically, it provides:

> In order to perform a *full range of sedentary work*, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. *If an individual is unable to sit for a total of 6 hours in an 8-hour workday, the unskilled sedentary occupational base will be eroded. The extent of the limitation should be considered in determining whether the individual has the ability to make an adjustment to other work.*

*Id.* at *6. (emphasis added). Social Security Ruling 96-9p further states that the Medical-Vocational Guidelines direct "a decision of 'disabled' for individuals age 50 and over who are limited to a full range of sedentary work, *unless the individual has transferable skills or education that provides for direct entry into skilled sedentary work...*" *Id.* at *2. (emphasis added); *see also* 20 C.F.R. § 404.1568(d).

The Commissioner argues that the ALJ followed the regulations and only found Homer not disabled after listening to VE testimony stating that Homer had transferable skills that provided for her direct entry into other work that existed in significant numbers in the national economy. (Defendant's Brief ("Def. Br.") at 5, citing Tr. 16-17.)

The majority of individuals such as Homer who are over 50 must be found disabled even if limited to a full range of sedentary work under the rules and guidelines in appendix 2. *See* Social Security Ruling 96-9p, 1996 WL 374185 at *3. But even an individual who is limited to less than a full range of sedentary does not necessarily qualify as disabled, although "a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded" *Id.* The rules require an ALJ evaluating an individual limited to a partial range of sedentary work to "*make an individualized determination, considering age, education, and work experience, including any skills the individual may have that are transferable to other work, or education that provides for direct entry into skilled work, under the rules and guidelines in the regulations.*" *Id.* (emphasis added).

Based on the guidance provided in Social Security Ruling 96-9p, the Court finds that Homer's RFC does not necessarily preclude her from any occupation in the national economy as a matter of law. But the ALJ in Homer's case failed to address the significance of the erosion of the

occupational base with the VE. Nor did he question the VE to ensure that the positions she listed as viable occupations for Homer would be performable if Homer could not sit nor stand for more than four hours each in an eight-hour work day. Thus, the Court finds that the ALJ's decision should be remanded to apply the proper legal standard according to Social Security Ruling 96-9p.

### B. Whether the ALJ's step five determination that Homer is capable of sustained work is supported by substantial evidence

Homer's second point on appeal is that the ALJ's determination that she was capable of sustained work is not supported by substantial evidence. (Pl. Br. at 13-20.) Specifically, Homer claims that: (1) the ALJ erred in adopting the VE's erroneous opinion that Homer's past relevant work included PBX operator and cashier; (2) the VE erred in defining Homer's occupations at FWISD and Child Care Associates as "teacher assistant" as that job is described in the *Dictionary of Occupational Titles* ("*DOT*"); (3) the "transferable skills" found by the VE were based on non-relevant past work; (4) the "transferable skills" found by the VE did not meet the definition of a skill;[3] and (5) the ALJ inappropriately failed to solicit valid VE testimony to support his finding regarding vocational adjustment (Tr. 13-16.)

First, Homer claims that the ALJ erred in adopting the VE's opinion that Homer's past relevant work included cashier and PBX operator. (Pl. Br. at 13-14.) There are three requirements which must be met in order for a claimant's past work to be relevant. First, the occupation must have been performed within the past 15 years. Social Security Ruling 82-62, 1982 WL 31386, *1. Second, the claimant must have performed the occupation long enough to have become proficient in the required duties. *Id.* Third, the occupation must have been performed at substantial gainful activity ("SGA") earnings levels. *Id.*; 20 C.F.R. § 404.1571-74. Homer asserts that neither the cashier position nor the PBX operator position are relevant past work for purposes of transferable skills because the third requirement, SGA level earnings, has not been met. (Pl. Br. at 13-14.)

---

[3] Because the Court finds that the ALJ's decision is not supported by substantial evidence for other reasons, *infra*, it declines to address this legal issue which has not yet been decided in this Circuit.

Because the VE did not specify which jobs Homer's "transferable skills" came from, Homer argues that the communication skills identified cannot be relevant testimony.

Second, Homer claims that the VE improperly identified Homer's past relevant work as that of a teacher's assistant as that job is described in the *DOT*. (Pl. Br. at 14-15.) In her testimony at Homer's hearing, the VE simply described Homer's past relevant work as "teacher assistant" as that position is described in the *DOT* - light in exertional level with an SVP of *three to four*. (Tr. 28.) She did not testify as to the skills or duties required for the occupation. The *DOT* description of the occupation of teacher assistant is as follows:

> Performs any combination of following instructional tasks in classroom to assist teaching staff of public or private *elementary or secondary school*: Discusses assigned teaching area with classroom teacher to coordinate instructional efforts. Prepares lesson outline and plan in assigned area and teaching aids, such as bibliographies, charts, and graphs. Presents subject matter to students, utilizing variety of methods and techniques, such as grades examinations. Assists students, individually or in groups, with lesson assignments to present or reinforce learning concepts. Confers with parents on progress of students. May specialize in single subject area. May be required to have completed specified number of college education credits. GOE: 11.02.01 STRENGTH: L GED: R4 M3 L4 *SVP: 6* DLU: 86.

*Dictionary of Occupational Titles* (4th ed., 1991) (emphasis added).

First, Homer points out that the work she previously performed does not coincide with the aforementioned *DOT* description. (Pl. Br. at 14-15.) Homer's job with FWISD as a teacher assistant, as she described it, involved working with special needs preschool-aged children with her duties including lifting, diaper changes, retraining, tube feeding and toilet training. (Tr. 125, 141.) Her job as a teacher assistant at Child Care Associates included the duties of opening the center, greeting, head counts, collecting money, breakfast preparation, and working with three-year-olds for instruction. (*Id.*) Moreover, Homer argues, the SVP of teacher assistant in the *DOT* is 6, significantly higher than the 3 or 4 described by the VE's testimony. (Pl. Br. at 15.) Homer further asserts that the ALJ failed to fulfill his "affirmative responsibility to ask about any possible conflict between that VE or VS evidence and the information provided in the *DOT*," and to request a reasonable explanation for any apparent conflict. (Pl. Br. at 15, citing Social Security Regulation

00-4p, 2000 WL 1898704, *2.) Thus, Homer argues, erroneous testimony formed the basis for the ALJ's decision.

Next, Homer claims that the "transferable skills" found by the VE were based on non-relevant past work. (Pl. Br. at 15-16). The ALJ relied upon the testimony of the VE to find that Homer had transferable "communication" skills that would allow her to perform sedentary occupations requiring the same skills. (Tr. 16-17.) In order for past skills to be transferable, the skills must have been "demonstrated in vocationally relevant past jobs." Social Security Ruling 82-41 (1979). Homer argues that because no past relevant work was accurately defined, the VE could not accurately identify transferable skills and Homer must be found disabled under 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.07 and 201.06. (Pl. Br. at 15-16.)

Finally, Homer also argues that the ALJ's opinion on Homer's vocational adjustment was not based on VE testimony or substantial evidence. (Pl. Br. at 19-20). In cases where a claimant, such as Homer, is of advanced age, has at least a high school education, and has skills from past previous skilled or semi-skilled work that are transferable, it must be shown that the claimant's performable occupations will require "very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." (Pl. Br. at 20, citing 20 C.F.R. Pt. 404, Subpt. P. App. 2, Rule 200.00(f).) Homer argues that the ALJ merely opined, without VE testimony on the subject, that "the jobs recited by the vocational expert are so similar to the claimant's previous work experience that the claimant would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." (*Id.*, citing Tr. 17.) Homer avers that because her past relevant work was never properly addressed, the tools, work processes, settings and industries used in her past relevant work were not properly defined. (*Id.*)

In response to Homer's arguments regarding the VE's allegedly erroneous testimony, the Commissioner first claims that Homer cannot now question whether the cashier and PBX operator positions are SGA because her attorney did not cross-examine the VE on the subject at her hearing. (Def. Br. at 6.) The Commissioner cites the Fifth Circuit Court of Appeals' decision in *Carey v.*

*Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) as support. But the Court finds that the Commissioner's reliance on *Carey* for this point is misplaced. In *Carey*, the Fifth Circuit discussed situations in which there is an implied or indirect conflict between the VE's testimony and the *DOT*. 239 F.3d at 146-47. Whether the identified past relevant work qualifies as SGA is not an issue of conflict between VE testimony and the *DOT*. Rather, it is an issue of earnings levels, and the Commissioner does not dispute Homer's assertion that the cashier and PBX operator jobs fail to meet the required earning levels. (Def. Br. at 5-6.) Thus any "transferable skills" the VE may have assumed Homer acquired from those jobs cannot be substantial evidence supporting the ALJ's determination that Homer was not disabled.

Next, regarding Homer's past relevant work identified as "teacher assistant," and the conflict between the *DOT* and the VE's testimony, *Carey* is instructive. The Fifth Circuit in *Carey* held that in such cases "the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." 239 F.3d at 146-47. The Court further instructed that claimants should not be allowed to "scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the *DOT*, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Id.* Rather, the Court stated that it was adopting a "middle ground approach," favoring neither the *DOT* nor the VE testimony, but rather asking "whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs." *Id.* The Court recognized that a VE's "erroneous characterization of the exertional level or skills required to perform a particular job calls into question both the probative value and reliability of the expert's testimony." *Id.* Finally, the Court emphasized that the information must be viewed in the context of the record as a whole. *Id.*

The Commissioner claims that Homer's description of her past work as a teacher assistant was consistent with the *DOT* description. However, viewing the conflict between the VE's testimony regarding Homer's past teacher assistant jobs and the *DOT* in light of the record as a

whole, it is apparent that the duties of the jobs Homer performed working with three-year-old, pre-elementary school children do not match in any way the *DOT* description of teacher assistant which describes teaching assistants in elementary and secondary schools with an SVP of 6. Nor has the Commissioner provided any explanation for the ALJ's failure to address inconsistencies between the VE's testimony and the *DOT* regarding the SVP level. In this case, there is a conflict between the VE's testimony about the teacher assistant position and the information in the *DOT* and the ALJ failed to resolve the conflict. Thus, the VE's testimony cannot suffice as substantial evidence supporting the ALJ's step five finding that she could perform other work in the economy given her RFC.

Finally, the Court turns to Homer's claim that the ALJ improperly failed to rely on VE testimony in his finding regarding vocational adjustment. The Commissioner alleges that the VE's testimony regarding the duties of the information clerk and appointment clerk actually informed the ALJ that little, if any, adjustment was needed in order for Homer to perform these occupations. (Def. Br. at 11; Tr. 27.) The Commissioner argues, in essence, that the VE's description of the identified occupations as categorically requiring "answering the telephone, meeting and greeting people and giving out information to people" translates to little, if any, adjustment from a past work history that included lifting three-year-olds, changing diapers, retraining, tube feeding, toilet training, head counts, collecting money, breakfast preparation, and working with three-year-olds for instruction. (Tr. 125, 141; Pl. Br. at 14.) The only identified job duty that overlaps between the jobs identified and Homer's past work is greeting people, and that alone does not constitute substantial evidence upon which the ALJ could base his determination that there would be little, if any, adjustment needed. The ALJ failed to properly solicit VE testimony in his finding regarding vocational adjustment, and for this additional reason his step five determination is without substantial evidence.

Examining the evidence in the record as a whole, the Court finds that the ALJ did not apply the correct legal standards in making his step five finding that Homer was not disabled. Nor is his decision supported by substantial evidence. Remand is therefore appropriate.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings and conclusions.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. Thus the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation is **March 3, 2011**. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **March 3, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

**SO ORDERED.**
**February 17, 2011**

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/cak